[Cite as *Bevelacqua v. Tancak*, 2022-Ohio-4442.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| JOHN BEVELACQUA | C.A. No.   21CA011797 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JUSTIN TANCAK, et al. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellees | CASE No.   18 CV 196005 |

DECISION AND JOURNAL ENTRY

Dated: December 12, 2022

TEODOSIO, Presiding Judge.

{¶1} Plaintiff-Appellant, John Bevelacqua, appeals from the decision of the Lorain County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellees, the Lorain County Board of Commissioners ("Lorain County"), Columbia Township, and Deputy Adam Shaw. This Court affirms in part, reverses in part, and remands for further proceedings.

I.

{¶2} Just after 2:30 a.m. on August 20, 2016, Sara Bevelacqua was killed when she was thrown from the back of a motorcycle. Its driver, Justin Tancak, was speeding when Lorain County Sheriff's Deputy Adam Shaw spotted him and signaled for him to stop. A chase ensued, and Deputy Shaw pursued Mr. Tancak at speeds of almost 120 mph. Several minutes later, Deputy Shaw was directed to terminate his pursuit. He acknowledged the directive, reduced his speed, and deactivated his cruiser's lights and sirens. Nevertheless, he continued to follow the motorcycle and drive well over the posted speed limit. He was still following the motorcycle when Mr. Tancak

lost control and crashed near the eastbound ramp to State Route 20 from State Route 57. The crash resulted in minor injuries to Mr. Tancak and fatal injuries to Ms. Bevelacqua. Following a review of the incident, the Lorain County Sheriff's Department terminated Deputy Shaw's employment.[1]

{¶3} Mr. Bevelacqua, individually and as administrator of his daughter's estate, filed suit against Mr. Tancak, Mr. Tancak's insurance company, the Lorain County Sheriff's Department, Deputy Shaw, and unnamed John Does. Mr. Bevelacqua later dismissed the insurance company from the suit and sought leave to file an amended complaint. The purpose of the amendment was to substitute Lorain County as a defendant in place of the Sheriff's Department and Columbia Township as a defendant in place of an unnamed John Doe. Mr. Bevelacqua requested the latter substitution because he learned Deputy Shaw was engaged in patrol duties for Columbia Township at the time of the crash due to an agreement between the township and Lorain County for the provision of additional law enforcement services. Over objection, the trial court allowed Mr. Bevelacqua to file his amended complaint.

{¶4} Mr. Bevelacqua's amended complaint alleged (1) a negligence claim against Mr. Tancak; (2) a gross neglect claim against Lorain County, Columbia Township, and Deputy Shaw, (3) a negligent hiring, training, and retention claim against Lorain County and/or Columbia Township; (4) an intentional and/or negligent infliction of emotional distress claim against all named defendants; and (5) a wrongful death claim against all named defendants. The amended complaint sought compensatory damages, burial and funeral expenses, costs, attorney fees, and punitive damages from all named defendants, jointly and severally. Each named defendant

---

[1] Deputy Shaw's employment was later reinstated because an arbitrator found that he had not been disciplined within the timeframe set forth by his employment contract and that his reinstatement would not offend public policy.

answered the amended complaint, and Deputy Shaw and Columbia Township cross-claimed Mr. Tancak for indemnification.

{¶5} Lorain County, Columbia Township, and Deputy Shaw moved for summary judgment on various grounds, including statutory immunity. Mr. Bevelacqua filed briefs in opposition to each of their motions, and the three defendants filed replies. Upon review, the trial court awarded summary judgment to Lorain County, Columbia Township, and Deputy Shaw. Mr. Bevelacqua then filed a notice of voluntary dismissal with respect to his claims against Mr. Tancak, and the trial court dismissed those claims.

{¶6} Mr. Bevelacqua now appeals from the trial court's decision to award summary judgment to Lorain County, Columbia Township, and Deputy Shaw. He raises four assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE LOWER COURT ERRED IN RULING THAT DEPUTY SHAW WAS RESPONDING TO AN EMERGENCY CALL AND ENTITLED TO IMMUNITY UNDER O.R.C. §2744.02.

{¶7} In his first assignment of error, Mr. Bevelacqua argues the trial court erred in its summary judgment determination because the evidence showed Deputy Shaw was not "responding to an emergency call" when his actions caused Mr. Tancak to lose control of his motorcycle. Upon review, we must conclude genuine issues of material fact exist with respect to that issue. Accordingly, this Court sustains Mr. Bevelacqua's assignment of error on that basis.

Summary Judgment Standard

{¶8} Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the nonmoving party and must resolve any doubt in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶9} The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm:

[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

Political Subdivision Immunity

{¶10}  Ohio's Political Subdivision Tort Liability Act, which governs political subdivision liability and immunity, is codified in R.C. 2744.01 et seq.  *McNamara v. City of Rittman*, 125 Ohio App.3d 33, 43 (9th Dist.1998).  The Act "sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property."  *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, ¶ 9.  Under the first tier of the analysis, political subdivisions enjoy a general grant of immunity for any injuries, deaths, or losses "allegedly caused by any act or omission of the political subdivision or [its] employee * * * in connection with a governmental or proprietary function."  R.C. 2744.02(A)(1).  "That immunity, however, is not absolute."  *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, ¶ 21.

{¶11}  Under the second tier of the analysis, a political subdivision's "comprehensive immunity can be abrogated pursuant to any of the five exceptions set forth at R.C. 2744.02(B)."  *Shalkhauser v. Medina*, 148 Ohio App.3d 41, 46 (9th Dist.2002).  If one of those exceptions applies, R.C. 2744.02(B) also provides several "full defenses" a political subdivision may assert in specific instances.  *See* R.C. 2744.02(B)(1)(a)-(c).  Those full defenses, if proven, will result in the political subdivision retaining its cloak of immunity.  *See McConnell* at ¶ 22-23.  If no full defense is proven or available to the political subdivision under R.C. 2744.02(B)(1), then the analysis proceeds to the third tier.  Under the third tier, immunity "may be restored, and the political subdivision will not be liable, if one of the defenses enumerated in R.C. 2744.03(A) applies."  *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 13CA010335, 2014-Ohio-969, ¶ 10.

{¶12}  Mr. Bevelacqua does not dispute Lorain County and Columbia Township are political subdivisions entitled to a general grant of immunity under R.C. 2744.02(A)(1).  His first assignment of error concerns the exception to immunity contained in R.C. 2744.02(B)(1) and the full defense contained in R.C. 2744.02(B)(1)(a).  That exception provides:

> Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority.

R.C. 2744.02(B)(1).  A "full defense" to the foregoing exception is available if

> [a] member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct * * *.

R.C. 2744.02(B)(1)(a).  Read together, the foregoing statutes make clear that a political subdivision will not be liable for an employee's negligent operation of a motor vehicle if the employee (1) was a member of a police agency, (2) who was responding to an emergency call, and (3) who was operating the vehicle without engaging in willful or wanton misconduct.  *See id.*

{¶13}  The phrase "emergency call" is statutorily defined as "a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer."  R.C. 2744.01(A).  An officer may be responding to a call to duty, and therefore an emergency call, even if he lacks the authority to arrest.  *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, ¶ 39-40.  An "'emergency call' involves a situation to which a response by a peace officer is required by the officer's professional obligation."  *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, syllabus.  To determine whether an emergency call exists in a pursuit scenario, a court must consider "'all the attendant facts and circumstances leading up to or giving rise to the pursuit, including the operation of the fleeing motorist's vehicle during the pursuit.'"

(Emphasis omitted.) *Shalkhauser* at ¶ 24, quoting *Wagner v. Heavlin*, 136 Ohio App.3d 719, 729 (7th Dist.2000).

{¶14} The trial court found Lorain County and Columbia Township were immune from suit because reasonable minds could only conclude they established a full defense to liability under R.C. 2744.02(B)(1)(a). Regarding the "emergency call" element of that full defense, the trial court found police officers have a duty to apprehend reckless motorists who make the roads dangerous for others. Because Deputy Shaw observed Mr. Tancak traveling 70 mph in a 45-mph zone, the court reasoned, the deputy was engaged in a call to duty when he attempted to apprehend Mr. Tancak for speeding. Thus, the trial court concluded Deputy Shaw was "responding to an emergency call" for purposes of R.C. 2744.02(B)(1)(a).

{¶15} Mr. Bevelacqua contends the full defense outlined in R.C. 2744.02(B)(1)(a) is inapplicable because Deputy Shaw was not responding to an emergency call when Mr. Tancak lost control of his motorcycle. At that time, Deputy Shaw had already been ordered to terminate his pursuit of Mr. Tancak and had deactivated his lights and sirens in response to that command. According to Mr. Bevelacqua, Deputy Shaw had an obligation to stop following Mr. Tancak once he received the order to terminate his pursuit. Because the deputy disobeyed that order, Mr. Bevelacqua argues, he was not answering a call to duty when the crash occurred. Thus, Mr. Bevelacqua argues the trial court erred when it found the deputy was "responding to an emergency call" under R.C. 2744.02(B)(1)(a).

{¶16} Initially, we note Mr. Bevelacqua's assignment of error includes an argument that, because he was not responding to an emergency call, "[Deputy] Shaw was no longer entitled to the defense of political subdivision immunity." That argument is misplaced. R.C. 2744.02(B) only pertains to political subdivisions. "For the individual employees of political subdivisions, the

analysis of immunity differs." *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, ¶ 17. R.C. 2744.03(A)(6) governs individual employee immunity and does not require proof that an employee was responding to an emergency call. *See id.* As such, Mr. Bevelacqua's emergency call argument is only relevant to Lorain County and Columbia Township. We limit our review accordingly.

{¶17} The record reveals the following evidence. As he was traveling eastbound on State Route 82, Deputy Shaw spotted Mr. Tancak's motorcycle and a second motorcycle traveling westbound. He clocked the motorcycles at 70 mph in a 45-mph zone, so he executed a U-turn, activated his lights and sirens, and rapidly accelerated. Because the motorcyclists continued to drive as Deputy Shaw changed direction, there was a significant gap between his cruiser and the motorcycles when the pursuit began. A gap remained over the next forty seconds, at which point the motorcycles reached Station Road. One motorcycle turned north onto Station Road while the other continued westbound on State Route 82. Deputy Shaw decided to continue pursuing the westbound motorcycle, driven by Mr. Tancak.

{¶18} Deputy Shaw was able to close the distance between his cruiser and Mr. Tancak's motorcycle about twenty seconds later. He read Mr. Tancak's license plate before radioing dispatch to identify the owner of the motorcycle and share his location. At that time, Deputy Shaw did not advise dispatch there was a passenger on the back of the motorcycle. It was his testimony that he did not initially notice Ms. Bevelacqua because there were so many other demands on his attention.

{¶19} Deputy Shaw's supervisor and other members of his department discovered Mr. Tancak had a passenger on the back of his motorcycle when he drove through the intersection of State Route 82 and State Route 83. Other deputies, including Deputy Adam Trifiletti, had

positioned their cruisers to stop cross-traffic at that intersection and were waiting there when Mr. Tancak and Deputy Shaw drove through it. When Deputy Trifiletti saw Mr. Tancak had a passenger, he immediately told Deputy Shaw to terminate the pursuit. Deputy Shaw verbally acknowledged that directive but also said he was going to keep following the motorcycle to "make sure they don't crash." No one ordered Deputy Shaw not do so or otherwise responded to his statement.

{¶20} Deputy Trifiletti had more seniority than Deputy Shaw but was not his supervisor. The supervisor on duty at the time of the pursuit was Sergeant Robert Perkins. Sergeant Perkins communicated with Deputy Shaw and the other deputies by radio as these events unfolded. The sergeant testified that he ordered Deputy Shaw to terminate his pursuit immediately after Deputy Trifiletti gave the same command. Deputy Trifiletti recalled hearing the sergeant's order, but the order was not captured on the recording of radio transmissions exchanged during the pursuit. It was Deputy Shaw's testimony that he never heard the sergeant's order. Moreover, Sergeant Perkins never heard Deputy Shaw say he was going to continue following the motorcycle. According to Sergeant Perkins, "the radios were terrible" and he missed several radio transmissions that evening.

{¶21} Deputy Shaw deactivated his cruiser's lights and sirens after Deputy Trifiletti told him to terminate the pursuit. He continued to follow Mr. Tancak westbound on State Route 82 and, eventually, northbound on State Route 57. Mr. Tancak lost control of his motorcycle at the entrance ramp for State Route 20.

{¶22} Following the crash, Lieutenant Daniel Ashdown was assigned to review the pursuit. His experience as an accident reconstructionist allowed him to calculate the average speeds at which Deputy Shaw traveled before and after he deactivated his cruiser's lights and

sirens in response to Deputy Trifiletti's directive. Between the time Deputy Shaw first activated his lights and sirens and the time he received Deputy Trifiletti's directive to terminate the pursuit, his average speed fluctuated between 68 mph and 120 mph in 45-mph and 50-mph zones. Deputy Trifiletti gave his directive at the intersection of State Route 82 and State Route 83. It took Deputy Shaw ten seconds to reach the next intersection of State Route 82 and Giles Road. During those ten seconds, his average speed was 118 mph. Another 42 seconds elapsed before he reached the intersection of State Route 82 and Durkee Road, during which his average speed was still 105 mph. From that point until the crash occurred, Deputy Shaw's average speed remained between 72 mph and 79 mph in 45-mph and 50-mph zones. Lieutenant Ashdown concluded Deputy Shaw had continued to pursue Mr. Tancak after being told to terminate his pursuit and, in doing so, had violated several standard operating procedures.

{¶23} It was Deputy Shaw's testimony that, once he deactivated his lights and sirens, he was no longer trying to stop Mr. Tancak. He was only "following at a safe distance in case they crash[ed]." Deputy Shaw recalled being part of a pursuit during his training wherein a deputy continued to follow a vehicle after a pursuit was terminated to render aid in the event of a crash. The policies and procedures applicable to the Lorain County Sheriff's Department at the time of the pursuit also contained no clear directive requiring a deputy to stop his cruiser following the termination of a pursuit. Nevertheless, several deputies and senior officers found fault with Deputy Shaw's decision to follow Mr. Tancak after the termination of the pursuit. Lieutenant Daniel Ashdown testified Deputy Shaw should have returned to normal speeds after the pursuit was terminated and violated his duties by continuing to follow Mr. Tancak in the manner he did. In a report prepared after the incident, Sergeant Perkins wrote that Deputy Shaw should have slowed his speed and returned to his detail after being advised to terminate. Likewise, in a report prepared

in connection with Deputy Shaw's grievance proceedings, Chief Deputy Dennis Cavanaugh wrote that Deputy Shaw had committed several major offenses by continuing to pursue Mr. Tancak at unsafe speeds after being told to terminate his pursuit. Although his termination was later overturned on other grounds, Deputy Shaw's conduct following the directive he received to terminate his pursuit led to his termination from the department.

{¶24} As previously noted, the trial court found Deputy Shaw was "responding to an emergency call" when he followed Mr. Tancak because he saw him speeding and officers have a duty to apprehend reckless motorists. Mr. Bevelacqua set forth evidence, however, that Deputy Shaw was directed to terminate his pursuit well before Mr. Tancak crashed and was disciplined for his failure to do so.[2] Moreover, by his own admission, Deputy Shaw was no longer attempting to stop Mr. Tancak for speeding once he deactivated his lights and sirens. He indicated he was only following the motorcycle to be of assistance in the event of a crash. His actions at that point were, therefore, divorced from any duty to apprehend a reckless motorist. At best, they could be perceived as a call to duty to serve a community care-taking function. *See generally Smith*, 130 Ohio St.3d 51, 2011-Ohio-4674, at ¶ 44, fn.5 ("[E]ven when an officer is not on an emergency run, he may still be responding to a call to duty and thus be acting under a professional obligation to respond."). Given that Deputy Shaw was terminated for his actions,

---

[2] The record is not clear as to whether Deputy Shaw received an "order" to terminate. Sergeant Perkins testified he issued an order, and Deputy Trifiletti recalled hearing that order. The order was not captured on the recording of radio transmissions exchanged during the pursuit, however, and Deputy Shaw testified he never heard that order. Deputy Shaw indicated he terminated his pursuit based on the directive he received from Deputy Trifiletti, who was not acting in a supervisory capacity. We need not resolve this conflict in the evidence to decide the appeal. Accordingly, we take no position on the issue of whether Deputy Shaw received an "order" from a superior as opposed to a directive from a colleague. At the very least, Mr. Bevelacqua showed the deputy received a directive to terminate. Accordingly, this Court refers to the command he received as a "directive" rather than "order."

however, reasonable minds could differ as to whether he acted in a manner "required by [his] professional obligation." *Colbert*, 99 Ohio St.3d 215, 2003-Ohio-3319, at syllabus. *See also Brown v. Cuyahoga Falls*, 9th Dist. Summit No. 24914, 2010-Ohio-4330, ¶ 14-16 (genuine issues of material fact remained as to whether officer was responding to an emergency call where officer unilaterally decided to respond to scene without activating lights and sirens or being ordered to do so). Mr. Bevelacqua set forth evidence of a triable issue regarding Lorain County and Columbia Township's ability to prove Deputy Shaw was responding to an emergency call, and therefore, to avail themselves of the immunity protections set forth in R.C. 2744.02(B)(1)(a). Accordingly, the trial court erred when it awarded summary judgment to Lorain County and Columbia Township. Mr. Bevelacqua's first assignment of error is sustained on that basis.

## ASSIGNMENT OF ERROR II

THE LOWER COURT ERRED IN DETERMINING THERE IS NO QUESTION OF FACT AS TO THE WILLFUL, WANTON, AND/OR RECKLESS MISCONDUCT OF APPELLEE SHAW.

{¶25} In his second assignment of error, Mr. Bevelacqua argues the trial court erred in its summary judgment determination because the evidence showed Deputy Shaw was engaging in willful, wanton, and/or reckless misconduct when his actions caused Mr. Tancak to lose control of his motorcycle. Because the foregoing standards are not interchangeable and different tests apply when a court determines whether a political subdivision or an employee of a political subdivision is immune from suit, we begin by outlining the applicable law.

Political Subdivision Immunity

{¶26} As previously noted, a three-tiered analysis applies when a court is determining whether a political subdivision is immune from liability. *Hortman*, 110 Ohio St.3d 194, 2006-Ohio-4251, at ¶ 9. Comprehensive immunity enjoyed under the first tier of the analysis may be

abrogated under the second tier if an exception to immunity applies. *Shalkhauser*, 148 Ohio App.3d at 46, citing R.C. 2744.02(B). A political subdivision then may seek to establish either a full defense to liability under the second tier of the analysis, *see* R.C. 2744.02(B)(1)(a)-(c), or an enumerated defense under the third tier of the analysis, *see* R.C. 2744.03(A). If the political subdivision succeeds in establishing either defense, it will be immune from suit. *See McConnell*, 158 Ohio St.3d 388, 2019-Ohio-4740, at ¶ 22-23; *Moss*, 2014-Ohio-969, at ¶ 10.

Employee Immunity

**{¶27}** When considering an individual employee's claim of immunity, courts "do not apply the same three-tiered analysis used to determine political subdivision immunity * * *." *Fisher v. Ahmed*, 9th Dist. Summit No. 29340, 2020-Ohio-1196, ¶ 25. Instead, courts must look directly to R.C. 2744.03(A)(6). *Cramer*, 113 Ohio St.3d 266, 2007-Ohio-1946, at ¶ 17. Relevant to this appeal, that statute provides immunity to individual employees of a political subdivision "unless * * * [their] acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner * * *." R.C. 2744.03(A)(6)(b). "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph three of the syllabus. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus.

Lorain County and Columbia Township

**{¶28}** As previously noted, Lorain County and Columbia Township sought to retain their cloak of immunity by establishing the full defense to immunity set forth in R.C. 2744.02(B)(1)(a).

That full defense applied if, at the time Deputy Shaw operated his police cruiser, he (1) was a member of a police agency, (2) who was responding to an emergency call, and (3) who operated his cruiser in a manner that "did not constitute willful or wanton misconduct * * *." R.C. 2744.02(B)(1)(a). Mr. Bevelacqua's second assignment of error concerns the third part of that defense. The trial court found reasonable minds could only conclude Deputy Shaw did not engage in any willful or wanton misconduct. Mr. Bevelacqua argues the trial court erred in its determination because genuine issues of material fact remain as to whether the deputy engaged in willful or wanton misconduct.

{¶29} With respect to Lorain County and Columbia Township, the question of whether Deputy Shaw engaged in willful or wanton misconduct only becomes relevant if he was responding to an emergency call. *See* R.C. 2744.02(B)(1)(a). That is because, if he was not responding to an emergency call, R.C. 2744.02(B)(1)(a) would not apply. In that instance, Mr. Bevelacqua would only need to show Deputy Shaw acted negligently when he operated his police cruiser. *See* R.C. 2744.02(B)(1). We have already determined genuine issues of material fact remain as to whether Deputy Shaw was responding to an emergency call. *See* Discussion of Assignment of Error One, *supra*. Any opinion this Court offered on the issue of whether Deputy Shaw engaged in willful or wanton misconduct would be purely advisory with respect to Lorain County and Columbia Township. Accordingly, we decline to address that aspect of Mr. Bevelacqua's assignment of error. *See Brown*, 2010-Ohio-4330, at ¶ 17.

Deputy Shaw

{¶30} Deputy Shaw was immune from suit "unless * * * [his] acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner * * *." R.C. 2744.03(A)(6)(b). Mr. Bevelacqua argues genuine issues of material fact remain as to whether the deputy acted in a

wanton or reckless manner. Upon review, however, this Court cannot address his argument. A review of the record reveals the trial court employed the incorrect legal standard when analyzing Deputy Shaw's immunity defense.

{¶31} In its judgment entry disposing of Mr. Bevelacqua's claims against Deputy Shaw, the trial court outlined the three-tiered analysis applicable to political subdivisions and wrote: "This Court must embark on the same three tier analysis in this case, involving an employee of a political subdivision." The trial court then proceeded to analyze whether Deputy Shaw was a member of a police department, whether he was responding to an emergency call, and whether he engaged in willful or wanton misconduct. *See* R.C. 2744.02(B)(1)(a). The trial court did not reference R.C. 2744.03(A)(6) in its decision. Because Deputy Shaw was an employee of a political subdivision, however, the test set forth in R.C. 2744.03(A)(6) was the only test applicable to him. *See Cramer*, 113 Ohio St.3d 266, 2007-Ohio-1946, at ¶ 17; *Fisher*, 2020-Ohio-1196, at ¶ 25. Relevant to this appeal, he was entitled to immunity for his actions or omissions unless they were wanton or reckless. *See* R.C. 2744.03(A)(6)(b).

{¶32} This Court declines to consider the evidence presented in the lower court within the context of R.C. 2744.03(A)(6) in the first instance. Our independent consideration of the record cannot "cure the trial court's failure to conduct its own initial examination of the evidence in compliance with Civ.R. 56." *Guappone v. Enviro-Cote, Inc.*, 9th Dist. Summit No. 24718, 2009-Ohio-5540, ¶ 11. "Were we to consider this matter, applying the appropriate law in the first instance, our decision would constitute a ruling on the motions for summary judgment in the first instance as well, effectively depriving the non-prevailing party of appellate review." *Id.* at ¶ 13. With respect to Deputy Shaw, this matter must be remanded for the trial court to apply the correct

law in the first instance. *See id.* Thus, Mr. Bevelacqua's second assignment of error is sustained insofar as it pertains to the trial court's ruling in favor of Deputy Shaw.

### ASSIGNMENT OF ERROR III

THE LOWER COURT ERRED HOLDING THAT APPELLEE SHAW'S ACTIONS AND/OR CONDUCT WAS NOT A PROXIMATE CAUSE OF THE MOTORCYCLE CRASH AND THAT THE SOLE PROXIMATE CAUSE OF THE MOTORCYCLE CRASH WAS DUE TO APPELLEE TANCAK'S CONDUCT.

{¶33} In his third assignment of error, Mr. Bevelacqua argues the trial court erred when it found Lorain County, Columbia Township, and Deputy Shaw were entitled to summary judgment because Mr. Tancak's conduct was the sole proximate cause of the motorcycle crash that claimed Ms. Bevelacqua's life. Upon review, we must conclude Mr. Bevelacqua's third assignment of error is premature.

{¶34} Although the trial court found Lorain County, Columbia Township, and Deputy Shaw statutorily immune from suit, it went on to consider the issue of proximate cause. The trial court found the political subdivisions and Deputy Shaw were entitled to summary judgment because the deputy did not proximately cause Ms. Bevelacqua's injuries and death. According to the trial court, reasonable minds could only conclude Mr. Tancak "was the sole proximate cause of Sarah Bevelacqua's passing." It is Mr. Bevelacqua's position that genuine issues of material fact remain for trial on the issue of proximate cause.

{¶35} "[S]tatutory immunity is a separate question from [a] plaintiff's ability to establish the elements of his or her claim[s]." *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, ¶ 10. Statutory immunity is an affirmative defense. *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, ¶ 17. If proven, it allows a political subdivision or its employees "to avoid liability regardless of whether the [plaintiff] [can] prove the

elements of the underlying claims." *Elias v. City of Akron*, 9th Dist. Summit No. 29107, 2020-Ohio-480, ¶ 14.  Thus, proximate cause only becomes relevant if a political subdivision or its employee is not statutorily immune from liability.

{¶36}  As previously noted, the trial court applied the incorrect law to determine whether Deputy Shaw is statutorily immune from suit.  *See* Discussion of Assignment of Error Two, *supra*. Accordingly, it is not yet clear whether the deputy is immune from liability.  Moreover, genuine issues of material fact remain as to whether Lorain County and Columbia Township may avail themselves of their immunity defense.  *See* Discussion of Assignment of Error One, *supra*.  If Lorain County, Columbia Township, and/or Deputy Shaw are ultimately found to be statutorily immune from suit that immunity would allow them to "avoid liability regardless of whether [Mr. Bevelacqua] can prove [proximate cause]."  *Elias* at ¶ 14.  This Court takes no position on the ultimate question of Lorain County, Columbia Township, and Deputy Shaw's immunity.  It is merely our conclusion that, at this juncture, any ruling we might issue on the proximate cause aspect of Mr. Bevelacqua's underlying claims would be premature.  For that reason, we decline to address the merits of Mr. Bevelacqua's third assignment of error.

## ASSIGNMENT OF ERROR IV

> THE LOWER COURT ERRED IN HOLDING APPELLEE LORAIN COUNTY BOARD OF COMMISSIONERS IS ENTITLED TO SUMMARY JUDGMENT PURSUANT TO MCCONNELL V. DUDLEY ON THE CLAIM OF NEGLIGENT RETENTION.

{¶37}  In his fourth assignment of error, Mr. Bevelacqua argues the trial court erred when it found Lorain County was entitled to summary judgment on his claim of negligent retention. Specifically, he argues the trial court erred as a matter of law when it found there is no exception to political subdivision immunity for a claim of negligent retention.  We do not agree.

**{¶38}** This Court reviews a trial court's interpretation of a statute de novo. *Sliwinski v. Village at St. Edward*, 9th Dist. Summit No. 24967, 2010-Ohio-3006, ¶ 11. "When construing a legislative enactment, * * * [a court must] begin with the plain language of the statute." *State ex rel. Horizon Science Academy of Lorain, Inc. v. Ohio Dept. of Edn.*, 164 Ohio St.3d 387, 2021-Ohio-1681, ¶ 14. "[I]f the meaning of the statute is unambiguous and definite, further interpretation is not necessary and a court must apply the statute as written." *Frye v. Am. Honda Motor Co., Inc.*, 9th Dist. Lorain No. 20CA011641, 2022-Ohio-878, ¶ 7.

**{¶39}** The comprehensive immunity a political subdivision enjoys under R.C. 2744.02(A) may only be abrogated pursuant to the exceptions established in R.C. 2744.02(B). Pursuant to R.C. 2744.02(B)(1), a political subdivision may be liable for damages caused by an employee's negligent operation of a motor vehicle. R.C. 2744.02(B)(1). The Supreme Court has held, however, that the statute "does not impose liability on a political subdivision for violating a duty in hiring, training, or supervising a police officer who is subsequently involved in an accident during a high-speed pursuit of suspects." *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, at ¶ 32. That is because the statute's plain language makes clear "that the political subdivision's liability depends on the *employee's* actions in driving the vehicle * * *." (Emphasis sic.) *Id.* at ¶ 29. "Nothing in the plain language of [the] statute provides an additional exception that imposes liability on the political subdivision for its actions in hiring, training, or supervising an employee or entrusting him or her with a vehicle * * *." *Id.* at ¶ 30.

**{¶40}** Citing *McConnell*, the trial court found Lorain County was entitled to summary judgment on Mr. Bevelacqua's claims of negligent hiring, training, and retention. Mr. Bevelacqua acknowledges *McConnell* is dispositive of his claims for negligent hiring and training. He argues the case should not be applied to his claim of negligent retention because *McConnell* did not

address negligent retention. Mr. Bevelacqua asks this Court to review the issue as a matter of first impression.

{¶41} Although the Supreme Court did not have cause to consider a claim of negligent retention in *McConnell*, its reasoning applies with equal force to Mr. Bevelacqua's claim for the same. A claim of negligent retention requires proof of an "'*employer's* negligence in * * * retaining the employee as the proximate cause of plaintiff's injuries.'" (Emphasis added.) *Zanni v. Stelzer*, 9th Dist. Lorain No. 07CA009108, 2007-Ohio-6215, ¶ 8, quoting *Collins v. Flowers*, 9th Dist. Lorain No. 04CA008594, 2005-Ohio-3797, ¶ 32. It does not arise from an *employee's* actions in negligently operating a motor vehicle. *See McConnell* at ¶ 29. "[N]egligence (or reckless, wanton, or willful conduct) in [retaining an employee] does not fall within the plain language of any of the exceptions established by R.C. 2744.02(B)(1) through (5)." *Id.* at ¶ 30. Nor has Mr. Bevelacqua offered any authority standing for the proposition that R.C. 2744.02(B) applies to a claim of negligent retention. *See* App.R. 16(A)(7). Upon review, we cannot conclude the trial court erred by relying on *McConnell* and awarding summary judgment to Lorain County on Mr. Bevelacqua's claim of negligent retention. As such, his fourth assignment of error is overruled.

## III.

{¶42} Mr. Bevelacqua's first assignment of error is sustained. His second assignment of error is sustained insofar as it pertains to Deputy Shaw, but this Court declines to address the remainder of that assignment of error on its merits. Likewise, this Court declines to address the merits of Mr. Bevelacqua's third assignment of error. His fourth assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

HENRY W. CHAMBERLAIN, Attorney at Law, for Appellant.

CHRISTOPHER M. DEVITO, Attorney at Law, for Appellant.

FRANK H. SCIALDONE and KATHLEEN M. MINAHAN, Attorneys at Law, for Appellee.

MEL L. LUTE, JR., Attorney at Law, for Appellee.

ANDREW N. YOSOWITZ, Attorney at Law, for Appellee.

JUSTIN TANCAK, pro se, Appellee.