[Cite as *Bevelacqua v. Tancak*, 2025-Ohio-217.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

JOHN BEVELACQUA, ETC.       C.A. No.     24CA012126

     Appellant/Cross-Appellee

     v.                         APPEAL FROM JUDGMENT
                                        ENTERED IN THE

JUSTIN D. TANCAK, et al.         COURT OF COMMON PLEAS
                                        COUNTY OF LORAIN, OHIO

     Appellees/Cross-Appellants      CASE No.     18-CV-196005

DECISION AND JOURNAL ENTRY

Dated: January 27, 2025

---

STEVENSON, Presiding Judge.

{¶1} Appellant John Bevelacqua appeals from the decisions of the Lorain County Court of Common Pleas granting summary judgment in favor of Appellee/Cross-Appellant Deputy Adam Shaw ("Deputy Shaw"), Appellee Lorain County Board of Commissioners ("Lorain County"), and Appellee Columbia Township on the issue of proximate cause. Deputy Shaw cross-appeals the trial court's judgment denying his motion for summary judgment on immunity under R.C. 2744.02(A)(6). On the issue of proximate cause, we conclude that reasonable minds could differ as to whether Deputy Shaw was a proximate cause of the crash that claimed Ms. Bevelacqua's life. Accordingly, we reverse and remand the trial court's judgment granting summary judgment on the issue of proximate cause. We affirm the trial court's judgment denying Deputy Shaw's motion for summary judgment on immunity under R.C. 2744.02(A)(6).

I.

## Relevant Background

{¶2}     This is not the first appeal filed in this matter.  Mr. Bevelacqua appealed the trial

court's decision granting summary judgment in favor of Lorain County, Columbia Township, and

Deputy Shaw in *Bevelacqua v. Tancak*, 2022-Ohio-4442 (9th Dist.) ("*Bevelacqua I*").  This Court

summarized the pertinent facts as:

> Just after 2:30 a.m. on August 20, 2016, Sara Bevelacqua was killed when she was thrown from the back of a motorcycle.  Its driver, Justin Tancak, was speeding when Lorain County Sheriff's Deputy Adam Shaw spotted him and signaled for him to stop. A chase ensued, and Deputy Shaw pursued Mr. Tancak at speeds of almost 120 mph. Several minutes later, Deputy Shaw was directed to terminate his pursuit. He acknowledged the directive, reduced his speed, and deactivated his cruiser's lights and sirens.  Nevertheless, he continued to follow the motorcycle and drive well over the posted speed limit.  He was still following the motorcycle when Mr. Tancak lost control and crashed near the eastbound ramp to State Route 20 from State Route 57. The crash resulted in minor injuries to Mr. Tancak and fatal injuries to Ms. Bevelacqua.  Following a review of the incident, the Lorain County Sheriff's Department terminated Deputy Shaw's employment.[1]
>
> Mr. Bevelacqua, individually and as administrator of his daughter's estate, filed suit against Mr. Tancak, Mr. Tancak's insurance company, the Lorain County Sheriff's Department, Deputy Shaw, and unnamed John Does. Mr. Bevelacqua later dismissed the insurance company from the suit and sought leave to file an amended complaint. The purpose of the amendment was to substitute Lorain County as a defendant in place of the Sheriff's Department and Columbia Township as a defendant in place of an unnamed John Doe.  Mr. Bevelacqua requested the latter substitution because he learned Deputy Shaw was engaged in patrol duties for Columbia Township at the time of the crash due to an agreement between the township and Lorain County for the provision of additional law enforcement services. Over objection the trial court allowed Mr. Bevelacqua to file his amended complaint.
>
> Mr. Bevelacqua's amended complaint alleged (1) a negligence claim against Mr. Tancak; (2) a gross neglect claim against Lorain County, Columbia Township, and Deputy Shaw, (3) a negligent hiring, training, and retention claim against Lorain County and/or Columbia Township; (4) an intentional and/or negligent infliction of

---

[1] Deputy Shaw's employment was later reinstated because an arbitrator found that he had not been disciplined within the timeframe set forth by his employment contract and that his reinstatement would not offend public policy.

emotional distress claim against all named defendants; and (5) a wrongful death claim against all defendants. The amended complaint sought compensatory damages, burial and funeral expenses, costs, attorney fees, and punitive damages from all named defendants, jointly and severally. Each named defendant answered the amended complaint, and Deputy Shaw and Columbia Township cross-claimed Mr. Tancak for indemnification.

Lorain County, Columbia Township, and Deputy Shaw moved for summary judgment on various grounds, including statutory immunity. Mr. Bevelacqua filed briefs in opposition to each of their motions, and the three defendants filed replies. Upon review, the trial court awarded summary judgment to Lorain County, Columbia Township, and Deputy Shaw. Mr. Bevelacqua then filed a notice of voluntary dismissal with respect to his claims against Mr. Tancak, and the trial court dismissed those claims.

(Footnote in original.) *Bevelacqua I* at ¶ 2-5.

**{¶3}** Mr. Bevelacqua appealed the trial court's decision awarding summary judgment to Lorain County, Columbia Township, and Deputy Shaw in *Bevelacqua I*. He argued in his first appeal that the trial court erred in ruling that Deputy Shaw was responding to an emergency call and entitled to immunity under R.C. 2744.02; there was no question of fact as to the willful, wanton, or reckless misconduct of Deputy Shaw; Mr. Tancak's conduct was the sole proximate cause of the motorcycle crash; and Lorain County was entitled to summary judgment on his negligent retention claim. *Id.* at ¶ 7, 25, 33, 37. This Court affirmed in part and reversed in part the trial court's decision and remanded the matter for further proceedings. *Id.* at ¶ 42.

**{¶4}** This Court noted in *Bevelacqua I* that Mr. Bevelacqua's argument that Deputy Shaw was not responding to an emergency call and, therefore, not entitled to political subdivision immunity was misplaced. *Id.* at ¶ 16. This argument was misplaced because "R.C. 2744.02(B) only pertains to political subdivisions[]" and "R.C. 2744.03(A)(6) governs individual immunity and does not require proof that an employee was responding to an emergency call." *Id.* This Court accordingly limited its review and concluded that the trial court erred when it granted summary judgment to Lorain County and Columbia Township. *Id.* at ¶ 16, 24. The trial court erred because

"Mr. Bevelacqua set forth evidence of a triable issue regarding Lorain County and Columbia Township's ability to prove Deputy Shaw was responding to an emergency call, and therefore, to avail themselves of the immunity protections set forth in R.C. 2744.02(B)(1)(1)." *Id.* at ¶ 24.

{¶5} This Court then concluded in *Bevelacqua I* that, based on the "determin[ation] [that] genuine issues of material fact remain as to whether Deputy Shaw was responding to an emergency call[,] . . . [a]ny opinion this Court offered on the issue of whether Deputy Shaw engaged in willful or wanton misconduct would be purely advisory with respect to Lorain County and Columbia Township." *Id.* at ¶ 29. With respect to Deputy Shaw, this Court declined to address the evidence against him because the trial court had not considered in the first instance the evidence within the context of R.C. 2744.03(A)(6). *Id.* at ¶ 32.

{¶6} This Court next concluded in *Bevelacqua I* that, because the trial court applied the incorrect law when determining whether Deputy Shaw is immune from suit, the issue of proximate cause was premature, and we declined to address the merits of this argument. *Id.* at ¶ 33. We noted that "[i]f Lorain County, Columbia Township, and/or Deputy Shaw are ultimately found to be statutorily immune from suit that immunity would allow them to 'avoid liability regardless of whether [Mr. Bevelacqua] can prove [proximate cause].'" *Id.* at ¶ 36, quoting *Elias v. City of Akron*, 2020-Ohio-480, ¶ 14 (9th Dist.).

{¶7} Lastly, *Bevelacqua I* addressed Mr. Bevelacqua's negligent retention claim against Lorain County. The trial court had awarded summary judgment to Lorain County on this claim and we concluded that the trial court did not err in this ruling. *Bevelacqua I* at ¶ 41.

{¶8} On remand, the trial court denied Deputy Shaw's motion for summary judgment on immunity, concluding "that material issues of genuine fact remain . . . as to whether the acts and/or

omissions of Deputy Shaw were done in a willful, wanton or reckless manner." The trial court also denied Mr. Bevelacqua's motion for reconsideration of proximate cause.

{¶9} Mr. Bevelacqua appeals, raising one assignment of error for our review. Deputy Shaw also appeals, raising one assignment of error for review.

II.

### MR. BEVELACQUA'S ASSIGNMENT OF ERROR

**THE LOWER COURT ERRED IN CONCLUDING THE ACTS AND/OR OMISSIONS OF APPELLEE/CROSS APPELLANT SHAW WERE NOT THE PROXIMATE CAUSE OF SARA BEVELACQUA'S DEATH AND DETERMINED THAT TANCAK'S CONDUCT WAS THE SOLE PROXIMATE CAUSE OF HER PASSING.**

{¶10} Mr. Bevelacqua argues in his sole assignment of error that the trial court erred when it found Lorain County, Columbia Township, and Deputy Shaw were entitled to summary judgment because Mr. Tancak's conduct was the sole proximate cause of the motorcycle crash that claimed Ms. Bevelacqua's life. He argues that the trial court did not consider Deputy Shaw's actions when addressing proximate cause and that it improperly focused on Mr. Tancak's actions and comments. This assignment of error was raised in Mr. Bevelacqua's first appeal but was not addressed because it was considered premature. Because it was not addressed in the first appeal the law of the case does not prohibit our review in this appeal. Without addressing whether a motion for reconsideration was the proper procedure on remand, and for the reasons set forth below, we conclude that there are genuine issues of material fact on the issue of proximate cause, and we reverse and remand the trial court's judgment on that basis.

### Proximate Cause

{¶11} In his brief, Mr. Bevelacqua addresses common law proximate cause as well as the no-proximate-cause rule. Under the no-proximate-cause rule, even if a law enforcement officer

contributed to the pursued's reckless driving, the officer was not a proximate cause of the accident unless there was some evidence that the officer's conduct was extreme or outrageous. *See Shalkhauser v. Medina*, 2002-Ohio-222, ¶ 48 (9th Dist.), citing *Lewis v. Bland*, 75 Ohio App.3d 453, 456 (9th Dist. 1991). The no-proximate-cause rule, and the requirement that the officer's conduct must be extreme or outrageous to be a proximate cause of the accident or injury, was later rejected by the Ohio Supreme Court in *Argabrite v. Neer*, 2016-Ohio-8374, ¶ 12. This Court will, accordingly, proceed to address proximate cause under a common law analysis.

{¶12} "'The 'proximate cause' of a result is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened.'" *Waugh v. Chakonas*, 2011-Ohio-2764, ¶ 8 (9th Dist.), quoting *Bell v. Babcock & Wilcox Co.*, 1993 WL 329900, *2 (9th Dist. Sept. 1, 1993), quoting *Piqua v. Morris*, 98 Ohio St. 42 (1918), paragraph one of the syllabus. "The term, 'proximate cause,' is often difficult of exact definition as applied to the facts of a particular case." *Clinger v. Duncan*, 166 Ohio St. 216, 222 (1957). "However, it is generally true that, where an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act unites with the original act to cause injury does not relieve the initial offender from liability." *Id.*

{¶13} A sequence of events may be the proximate cause of a result. *Waugh* at ¶ 8; *Piqua* at paragraph one of the syllabus. Hence, proximate cause is not limited to one event, person, or action. "The fact that some other cause concurred with the negligence of a defendant in producing an injury does not relieve him from liability, unless it is shown such other cause would have produced the injury independently of defendant's negligence." *Piqua* at paragraph one of the syllabus. "In the absence of circumstances [that] clearly indicate an obvious cause and effect

relationship, the issue of proximate cause is ordinarily one for the determination by the jury." (Internal quotations and citations omitted.) *Roth v. Tokar Tower Office Condominiums Unit Owners' Assn., Inc.*, 2023-Ohio-279, ¶ 17 (9th Dist.).

### Standard of Review for Summary Judgment

**{¶14}** This Court reviews an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the nonmoving party and must resolve any doubt in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992). "A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor." *Jones v. Soto*, 2023-Ohio-3107, ¶ 26 (9th Dist.).

### Analysis

**{¶15}** Mr. Bevelacqua argues that the trial court erred when it granted summary judgment on the issue of proximate cause. He maintains that the trial court improperly focused solely on Mr. Tancak's conduct and statement and that it failed to recognize or consider Deputy Shaw's conduct. Mr. Bevelacqua asserts that genuine issues of material fact remain as to whether Deputy Shaw was a proximate cause of the crash and passing of Ms. Bevelacqua.

**{¶16}** Deputy Shaw asserts that summary judgment was properly granted on the issue of proximate cause. He points out that he never collided with Mr. Tancak's motorcycle, and he argues

that he was nowhere near the motorcycle when it crashed. Columbia Township and Lorain County similarly argue that summary judgment was properly granted considering there was no physical contact between Deputy Shaw's cruiser and the motorcycle. They further argue that Deputy Shaw was not the proximate cause of the accident considering the pursuit had been terminated.

{¶17} With respect to proximate cause, the trial court had previously granted summary judgment on this issue in favor of Deputy Shaw, Lorain County, and Columbia Township. In its entries granting summary judgment, the trial court focused on Mr. Tancak's conduct and his admission that he "take[s] full responsibility" for the accident. The trial court did not address the other testimony in the record relating to the propriety and/or impropriety of Deputy Shaw's actions. Additionally, the trial court did not mention the arbitrator's finding that Deputy Shaw "violated a number of departmental policies," or the expert report and findings of Dr. Michael D. Lyman, Ph.D., who opined that Deputy Shaw's pursuit of Mr. Tancak was "unreasonable, reckless, and demonstrated a complete lack of concern for the safety and well-being of . . . Ms. Bevelacqua . . . ." Like the arbitrator, Dr. Lyman also opined that "Deputy Shaw's actions were inconsistent with nationally recognized policing standards, practices, and protocols - including the Lorain County Sheriff's Office policies and procedures." As previously stated, the trial court in its pre-remand rulings solely focused on Mr. Tancak's conduct and statement.

{¶18} It is generally true that, where an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act unites with the original act to cause injury does not relieve the initial offender from liability. *Clinger,* 166 Ohio St. at 222. Accordingly, a sequence of events may be the proximate cause of a result. *Waugh* at ¶ 8; *Piqua* at paragraph one of the syllabus. The trial court fails to recognize this principle and, instead, it focuses

on Mr. Tancak's actions "[a]s opposed to Deputy Shaw [.] . . ." The trial court notes that Mr. Tancak has little, if any, recollection of the accident, that he was operating the motorcycle late at night after drinking and smoking marijuana, and that he was speeding. While all these facts are undisputed, there is no mention of several undisputed facts in the record, including the fact that Deputy Shaw continued following Mr. Tancak's motorcycle at speeds in excess of the posted speed limits after he was ordered to terminate the pursuit; Deputy Shaw continued following Mr. Tancak even though he knew there was a passenger on the motorcycle; it was dark, and traffic was minimal; and Mr. Tancak is seen turning the motorcycle's headlight off and on. There is no mention of the dash cam video showing that Deputy Shaw was close to the motorcycle at times and traveling from a distance at other times. The trial court does not address the extensive testimony in the record relating to the propriety and/or impropriety of Deputy Shaw's actions, including testimony from Sergeant Robert Perkins, Lieutenant Daniel Ashdown, Chief Deputy Dennis Cavanagh, Deputy Matthew Schilke, Deputy Gage Hume, and Deputy Trifiletti. Further, there is no mention of other evidentiary materials in the record, including the arbitrator's findings that Deputy Shaw violated departmental policies and the affidavit and expert report of Dr. Lyman that claimed Deputy Shaw acted unreasonably and recklessly.

{¶19} In viewing the facts in a light most favorable to Mr. Bevelacqua, the non-moving party, reasonable minds could differ as to whether Deputy Shaw was a proximate cause of the crash that claimed Ms. Bevelacqua's life. Accordingly, Mr. Bevelacqua's sole assignment of error is sustained.

### DEPUTY SHAW'S ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED WHEN IT DENIED DEPUTY SHAW STATUTORY IMMUNITY UNDER R.C. § 2744.03(A)(6)(B). MORE SPECIFICALLY, THE TRIAL COURT ERRED BY HOLDING THAT**

**THERE WAS AN ISSUE OF FACT REGARDING WHETHER DEPUTY SHAW ACTED IN A WILLFUL, WANTON OR RECKLESS MANNER.**

**{¶20}** Deputy Shaw argues in his sole assignment of error that the trial court erred when it held that a genuine issue of material fact remains as to whether he acted in a willful, wanton or reckless manner and denied his motion for summary judgment. We disagree.

**{¶21}** As previously set forth, summary judgment is appropriate under Civ.R. 56 when (1) no genuine issue of material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, citing Civ.R. 56(C). The facts must be viewed in the light most favorable to the nonmoving party and any doubt must be resolved in favor of the nonmoving party. *Murphy*, 65 Ohio St.3d at -359. This Court reviews a summary judgment order de novo. *Grafton*, 77 Ohio St.3d at 105.

### R.C. 2744.03(A)(6) – Immunity of Employees of Political Subdivision

**{¶22}** This Court recognized in *Bevelacqua I* that the three-tiered immunity analysis for political subdivisions set forth in R.C. 2744.01 et seq. does not apply to individual employees of political subdivisions. *Bevelacqua I*, 2022-Ohio-4442, at ¶ 27 (9th Dist.). Rather, we look directly to R.C. 2744.03(A)(6) which provides immunity to individual employees of a political subdivision "'unless. . . their acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner . . . .'" *Id.*, quoting R.C. 2744.03(A)(6)(b). Because the trial court did not reference R.C. 2744.03(A)(6) in its initial decision, this Court remanded the issue in *Bevelacqua I* for the trial court to apply the correct law in the first instance. *Id.* at ¶ 32.

**{¶23}** The trial court held on remand that Mr. Bevelacqua's arguments do not support the allegations that Deputy Shaw acted with a malicious purpose or in bad faith. That holding is not at

issue in this appeal. At issue in this appeal is whether the trial court erred in denying Deputy Shaw statutory immunity under R.C. 2744.03(A)(6)(b) and holding that there is an issue of fact regarding whether he acted in a willful, wanton, or reckless manner.

{¶24} The Ohio Supreme Court explained in *Anderson v. Massillon*, 2012-Ohio-5711, paragraphs one through four of the syllabus:

> 1. "Willful," "wanton," and "reckless" describe different and distinct degrees of care and are not interchangeable.
>
> 2. Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not the to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.
>
> 3. Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result.
>
> 4. Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.

(Internal citations omitted.) *See also Bevelacqua I* at ¶ 27.

{¶25} Quoting the Ohio Supreme Court's decision in *Argabrite*, 2016-Ohio-8374, at ¶ 16, on remand the trial court acknowledged that "'[t]he danger of a high-speed chase alone is not enough to present a genuine issue of material fact concerning whether an officer acted . . . in a wanton or reckless manner.'" On remand, the trial court also quoted this Court's decision in *Shalkhauser*, 2002-Ohio-222, at ¶ 40 (9th Dist.), wherein we recognized that "'[b]y itself, the fact that a danger arises when a police officer pursues a fleeing driver is insufficient to present a genuine issue of material fact concerning whether the officer acted recklessly.'"[2]

---

[2] While the judicially created no-proximate-cause rule recognized in *Shalkhauser*, 2002-Ohio-222 (9th Dist.), was later rejected by the Ohio Supreme Court in *Argabrite*, 2016-Ohio-8374, this portion of *Shalkhauser* was not overruled.

{¶26} In addition to the initial high-speed chase, on remand the trial court referenced other evidentiary materials in the record pertaining to the post-pursuit speed of Deputy Shaw's cruiser; Deputy Shaw's violations of several Lorain County Sheriff departmental policies; and Deputy Shaw's decision to continue following Mr. Tancak after he was ordered to terminate the pursuit and after he had knowledge that there was a passenger on the motorcycle. The trial court also referenced evidence establishing that the pursuit was based on a minor traffic violation and that it occurred at 2:30 a.m. when there was minimal traffic present. The court found that, "[c]onsidering the totality of the evidentiary materials and viewing the facts in a light most favorable to plaintiff, the non-moving party, . . . material issues of genuine fact remain as reasonable minds could differ as to whether the acts and/or omissions of Deputy Shaw were done in a willful, wanton or reckless manner."

## Analysis

{¶27} Based on the evidence in the record, we conclude that the trial court did not err in finding that genuine issues of material fact remain as to whether Deputy Shaw acted in a willful, wanton or reckless manner. The record reveals that around 2:30 a.m. Deputy Shaw initiated a pursuit after observing Mr. Tancak's motorcycle commit a speeding violation. A marked lanes violation was observed after the pursuit was initiated. It was dark, the roads were dry, the weather was clear, and the pursuit occurred in a rural area with poor visibility. Traffic was minimal.

{¶28} According to Deputy Shaw, he did not notice that there was a passenger on Mr. Tancak's motorcycle when he initiated the pursuit or when he radioed dispatch with the motorcycle's license plate number. Mr. Bevelacqua argues that, based on the dash cam video, Deputy Shaw should have noticed Ms. Bevelacqua's presence when he radioed dispatch or even

earlier. Mr. Bevelacqua reasons that, if Deputy Shaw was close enough to the motorcycle to read the license plate number, he was close enough to notice the passenger's presence.

{¶29} Deputy Shaw turned off his cruiser's lights and sirens once Sergeant Perkins ordered him to terminate the pursuit. Deputy Shaw elected, however, to continue following the motorcycle, travelling in excess of the posted speed limits, "in case [it] crashed[.]" Deputy Shaw violated several Lorain County Sheriff departmental policies when he continued following the motorcycle.

{¶30} The dash cam video shows that, after the pursuit was terminated, but while Deputy Shaw was still following the motorcycle, there are a few instances where Mr. Tancak appears to turn off the motorcycle's headlight. As it was dark and Mr. Tancak does not remember the accident or the events leading to the accident, it is unknown why Mr. Tancak would turn off the motorcycle's headlight. Mr. Bevelacqua argues that Mr. Tancak turned off the headlight to evade detection.

{¶31} The record includes deposition testimony as to the stress of high-speed pursuits and an officer or deputy's resulting adrenaline, energy, and "tunnel vision[.]" After the pursuit had terminated, but while Deputy Shaw was still following the motorcycle, Deputy Adam Trifiletti "wanted to try to slow everything down" and help Deputy Shaw "get everything in perspective." Deputy Trifiletti had hoped to intercept Deputy Shaw at the gas station on Route 57 but did not arrive in time.

{¶32} As previously recognized, the record includes extensive testimony relating to the propriety and/or impropriety of Deputy Shaw's actions, including the testimony from Sergeant Perkins, Lieutenant Ashdown, Chief Deputy Cavanagh, Deputy Schilke, Deputy Hume, and

Deputy Trifiletti. The record also includes numerous evidentiary materials including the arbitrator's findings and opinion and Dr. Lyman's affidavit and expert report.

{¶33} As previously indicated, "[w]illful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson*, 2012-Ohio-5711, at paragraph two of the syllabus. "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Id.* at paragraph three of the syllabus. Further, reckless conduct "is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus.

{¶34} In viewing the facts in a light most favorable to Mr. Bevelacqua, the non-moving party, reasonable minds could differ as to whether the "acts or omissions [of Deputy Shaw] were [done] . . . in a wanton or reckless manner[.]" R.C. 2744.03(A)(6)(b). Reasonable minds could differ as to whether, after he was ordered to terminate the pursuit, Deputy Shaw continued following the motorcycle too closely and at speeds in excess of the posted speed limits with knowledge or appreciation that this conduct could result in a crash or injury. Reasonable minds could differ as to whether Deputy Shaw, who acknowledged that he followed the motorcycle to "make sure it doesn't crash[,]" failed to exercise care under the circumstances or whether he knew there was a great probability that harm will result. Further, in light of the evidentiary material including the dash cam video, expert report, and the testimony from other deputies, Sergeant Perkins, and Lieutenant Ashdown, reasonable minds could differ as to whether Deputy Shaw

consciously disregarded or was indifferent to a known or obvious risk of harm that was "unreasonable under the circumstances" and "substantially greater than negligent conduct." *Anderson* at paragraph four of the syllabus. Accordingly, the trial court did not err when it denied Deputy Shaw statutory immunity under R.C. 2744.03(A)(6). Deputy Shaw's assignment of error is overruled.

### III.

{¶35} In light of the foregoing, the judgment of the Lorain County Court of Common Pleas on the issue of proximate cause is reversed, and the matter is remanded for further proceedings consistent with this opinion. The judgment of the Lorain County Court of Common Pleas denying Deputy Shaw's motion for summary judgment on immunity under R.C. 2744.02(A)(6) is affirmed.

Judgment reversed in part,
and affirmed in part,
cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees/Cross-Appellants.

_____
SCOT STEVENSON
FOR THE COURT

HENSAL, J.
SUTTON, J.
CONCUR.

APPEARANCES:

HENRY W. CHAMBERLAIN, Attorney at Law, for Appellant/Cross-Appellee.

RAYMOND J. MARVER, Attorney at Law, for Appellant/Cross-Appellee.

KATHLEEN MINAHAN, Attorney at Law, for Appellees/Cross-Appellants.

ANDREW YOSOWITZ, Attorney at Law, for Appellees/Cross-Appellants.

MEL LUTE, Attorney at Law, for Appellees/Cross-Appellants.