[Cite as *Burchard v. Ashland Cty. Bd. of Dev. Disabilities*, 2018-Ohio-4408.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| COLLIN BURCHARD, ET AL. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellees | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 17-COA-041 |
| | : | |
| ASHLAND COUNTY BOARD OF | : | |
| DEVELOPMENTAL DISABILITIES, | : | |
| ET AL. | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Ashland County Court of Common Pleas, Case No. 17-CIV-117

JUDGMENT: REVERSED

DATE OF JUDGMENT ENTRY: October 29, 2018

APPEARANCES:

For Plaintiffs-Appellees:

BRIAN GARVINE
5 East Long Street, Suite 1100
Columbus, OH 43215

For Defendants-Appellants:

FRANK H. SCIALDONE
DAVID M. SMITH
Mazanec, Raskin & Ryder Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, OH 44139

*Delaney, J.*

{¶1} Defendants-appellants Ashland County Board of Developmental Disabilities ("Board") appeals from the November 8, 2017 Judgment Entry of the Ashland County Court of Common Pleas overruling the Board's motion to dismiss. Plaintiffs-appellees are Collin and Catherine Burchard.

## FACTS AND PROCEDURAL HISTORY

{¶2} The following facts are as alleged in appellees' amended complaint filed September 6, 2017.

{¶3} The Board operates Dale Roy School in Ashland, Ohio, a school for disabled individuals from age 3 to age 22.

{¶4} Collin Burchard is 19 years old, developmentally disabled, and was a student at Dale Roy School. Collin has a history of seizures, strokes, and an inability to regulate body heat. Appellees contend Dale Roy School was aware of these issues.

{¶5} On or around August 25, 2016, the temperature was 90 degrees with high humidity. In gym class, Collin participated in "activities which caused substantial injuries due to overexposure to heat and exertion." Although an aide "noted something was wrong with Collin," the aide did not seek medical attention. Collin's participation in gym class and performance of the activities which led to over-exposure to heat were contrary to his Individualized Education Plan ("IEP").

{¶6} At the end of the school day, Collin was transported home by Dale Roy in a vehicle with no air conditioning. The bus aide noted Collin's eyes appeared glassed over and Collin was unusually quiet. At home, Collin's mother's fiancé observed Collin in

distress and called 911. Collin was transported to Wooster Memorial Hospital and then to the Cleveland Clinic for treatment.

{¶7} The former Director of Education for Dale Roy directed that Collin's IEP be kept in the school file and it was not accessible to departments including the nursing and transportation departments. The former Director of Education resigned during an investigation into this matter by the Ohio Department of Developmental Disabilities ("DODD").

{¶8} Collin's IEP included a "transportation section" which was used to address special needs a student may require while being transported on a bus. In Collin's case, no special needs were identified or forwarded to the transportation department.

{¶9} Under the direction of the former Director of Education, teachers at Dale Roy were to complete a "Focus Form" containing information about each student. The Focus Form contained detailed information about Collin's medical conditions and how to prevent him from becoming overheated during the school day. The Focus Form completed by Collin's teacher the previous year was not forwarded to his current teacher until this incident occurred.

{¶10} In January 2016 the school nurse was given Collin's medical information, including his history of seizures and stroke. The nurse was present for discussion about Collin's inability to regulate body heat. No Emergency Care Plan was developed for Collin.

{¶11} Before this incident occurred, Dale Roy teachers, including the gym teacher, reviewed Collin's IEP and discussed his need for restrictions with his mother, Catherine. Collin's doctor required his gym class to be restricted.

{¶12} Before the incident, during multiple meetings with Dale Roy personnel, Catherine and Collin stressed Collin's inability to regulate body temperature which had in the past resulted in a stroke.

{¶13} DODD substantiated neglect based upon Dale Roy School's acts and omissions on August 25, 2016 regarding Collin's exposure to heat. As a result of DODD's investigation, Dale Roy School was given eleven recommendations to correct its "multiple errors" during this incident.

{¶14} The Burchards filed an amended complaint against the Board and Ashland County as defendants, asserting negligence/negligent retention and supervision; intentional infliction of serious emotional distress – Collin; intentional infliction of serious emotional distress – Catherine; and loss of consortium.[1]

{¶15} Defendants filed a motion to dismiss, asserting the Board is entitled to immunity pursuant to Chapter 2744 of the Ohio Revised Code and that Ashland County is not sui juris. The trial court granted the motion to dismiss Ashland County. The trial court further found, however, that the Board failed to address the Burchards' second and third claims for relief and therefore overruled the motion to dismiss the Board.

{¶16} The Board now appeals from the trial court's Judgment Entry of November 8, 2017. The Board raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶17} "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT/APPELLANT ASHLAND COUNTY BOARD OF DEVELOPMENTAL

---

[1] Plaintiffs' first complaint named Dale Roy School as a defendant and the school filed a motion to dismiss. Plaintiffs then filed the amended complaint omitting Dale Roy School and naming the Board and Ashland County as defendants.

DISABILITIES THE BENEFIT OF IMMUNITY UNDER REVISED CODE CHAPTER 2744."

## ANALYSIS

{¶18} The Board argues the trial court should have dismissed appellees' complaint on all counts on the basis of sovereign immunity. We agree.

{¶19} Our standard of review on a Civil Rule 12(B) motion to dismiss is de novo. *Huntsman v. State*, 5th Dist. Stark No. 2016CA00206, 2017–Ohio–2622, ¶ 20, citing *Greeley v. Miami Valley Maintenance Contractors Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). The Board argued appellees' complaint should be dismissed for failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey County Bd. of Commissioners,* 65 Ohio St.3d 545, 605 N.E.2d 378 (1992). Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991). In order to dismiss a complaint pursuant to Civil Rule 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 573 N.E.2d 1063 (1991).

{¶20} In the instant case, appellees allege that Collin was injured due to negligence, and the negligent retention and supervision of employees of Dale Roy School leading to the episode of overheating in gym class. Appellees further allege intentional infliction of emotional distress upon Collin and his mother, and his mother alleges loss of consortium.

{¶21} The Political Subdivision Tort Liability Act affords political subdivisions immunity from certain types of actions. Determining whether a political subdivision is immune from liability involves a three-tiered analysis. *Thompson v. Buckeye Joint Vocational School Dist.*, 2016-Ohio-2804, 55 N.E.3d 1, ¶ 16 (5th Dist.), citing *Cater v. Cleveland,* 83 Ohio St.3d 24, 28-29, 697 N.E.2d 610 (1998), abrogated on other grounds, *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261.  In the first tier, R.C. 2744.02(A)(1) provides broad immunity to political subdivisions and states in pertinent part, "a political subdivision is not liable for damages in a civil action for injury, death or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." In the second tier of the analysis, R.C. 2744.02(B) provides five exceptions that may lift the broad immunity provided for in R.C. 2744.02(A)(1). In the third tier, immunity may be reinstated if the political subdivision can demonstrate the applicability of one of the defenses found in R.C. 2744.03(A)(1) through (5). See, e.g., *Cramer v. Auglaize Acres,* 113 Ohio St.3d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9, at ¶ 16.

{¶22} Whether a political subdivision is entitled to this statutory immunity is a question of law for a court's determination. *Henney v. Shelby City School Dist.*, 5th Dist. Richland No. 2005 CA 0064, 2006-Ohio-1382, ¶ 28, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 291, 595 N.E.2d 862 (1992).  The trial court in the instant case denied the Board immunity on the pleadings.

{¶23} The Board is undisputedly a political subdivision pursuant to R.C. 2744.01(F) and is therefore presumptively immune.  See, *Strayer v. Barnett*, 2017-Ohio-

5617, 94 N.E.3d 156, ¶ 19 (2nd Dist.). If one of the exceptions outlined in R.C. 2744.02(B) is applicable, the Board may be subject to civil liability.

{¶24} The Board argues none of the exceptions listed in R.C. 2744.02(B) apply to any of appellees' claims. We will examine each in turn.

{¶25} We agree with the Board as to the second and third counts of appellees' complaint for intentional infliction of emotional distress. It is well-established there is no exception to sovereign immunity for the intentional tort of intentional infliction of emotional distress. *Wilson v. Stark Cty. Dept. of Human Serv.*, 70 Ohio St.3d 450, 453, 1994-Ohio-394, 639 N.E.2d 105; *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 8; *Miller v. City of Xenia*, 2nd Dist. Greene No. 2001 CA 82, 2002-Ohio-1303, unreported, 2002 WL 441386 at *3; *Griffits v. Newburgh Hts.*, 8th Dist. Cuyahoga No. 91428, 2009-Ohio-493, ¶ 26; see also *Maggio v. City of Warren,* Trumbull App. No.2006-T-0028, 2006-Ohio-6880. Therefore appellees' second and third counts should be dismissed.

{¶26} Appellees argue that R.C. 2744.02(B)(2) applies to the first count of their complaint, negligent retention and supervision. That section states: "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Appellants argue the supervising and retaining of employees by the Board is a proprietary function.

{¶27} The statutory definitions of "governmental function" and "proprietary function" are mutually exclusive. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d

551, 557, 2000-Ohio-486, 733 N.E.2d 1141.  R.C. 2744.01(C)(1) defines "governmental function" as a function of a political subdivision that is specified in another division or that satisfies any of the following: (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement; (b) A function that is for the common good of all citizens of the state; (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in another section as a proprietary function.

{¶28} Applicable to the Board, we note that R.C. 2744.01(C)(2)(o) specifies that a governmental function includes "[t]he operation of mental health facilities, developmental disabilities facilities, alcohol treatment and control centers, and children's homes or agencies."

{¶29} Appellees assert the Board's hiring and retention of employees, though, constitute a proprietary function separate from its governmental function.  R.C. 2744.01(G)(1) defines a "proprietary function" as a function of a political subdivision that is specified in another section or that satisfies both of the following:  (a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;  and (b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.

{¶30} Appellees cite *Bucey v. Carlisle*, 1st Dist. Hamilton No. C-090252, 2010-Ohio-2262, as authority for their proposition that the Board's supervision and retention of

employees constitute proprietary functions. We find, though, that *Bucey* does not support appellees' argument that "supervision and retention of employees" is a separate proprietary function distinct from the Board's governmental function in operating Dale Roy School. In *Bucey*, the First District Court of Appeals examined whether a claim for negligent screening of potential employees fit within R.C. 2744.02(B)(2) as a proprietary function of a school system. *Id.* at ¶ 15. The claim at issue was negligence in failing to properly background-check a school administrator. The First District found that "'the governmental function of providing a system of public education' cannot be accomplished without the activity at issue here, which we regard as simply the staffing of a public school with an administrator. This activity is so fundamental to the provision of a system of public education that it cannot be considered apart from the governmental function of 'providing a system of public education.'" *Id.* at ¶ 16.

{¶31} In the instant case, the Board's supervision and retention of employees at Dale Roy School is not distinct from its governmental function of operating facilities for persons with developmental disabilities. See, *Porter v. Probst*, 7th Dist. No. 13 BE 36, 2014-Ohio-3789, 18 N.E.3d 824, ¶ 32 [operation of jail constitutes government function and employment decisions made in exercise of government function fall within sovereign immunity]; *Campolieti v. Cleveland*, 8th Dist. No. 92238, 184 Ohio App.3d 419, 2009-Ohio-5224, 921 N.E.2d 286, ¶ 35-36 [marshaling and maintaining agency to protect public from fire is specifically-designated governmental function and employment decisions made within exercise of that function are within the protection of sovereign immunity]; *Schmitt v. Educational Serv. Ctr. of Cuyahoga Cty.*, 8th Dist. Cuyahoga No. 97623, 2012-Ohio-2210 [equitable and promissory estoppel inapplicable against political subdivision

engaged in governmental function, provision of public education is governmental function, and act of hiring personnel to staff public schools cannot be considered apart from governmental function of 'providing a system of public education']; *Wilson v. McCormack*, 2017-Ohio-5510, 93 N.E.3d 102, ¶ 31 (11th Dist.) [hiring, retention, supervision of high school basketball coach is inherent part of governmental function of providing public education]; *Perkins v. Columbus Bd. of Edn.*, 10th Dist. Franklin No. 13AP-803, 2014-Ohio-2783, ¶ 12 ["governmental function" extends to most school activities and administrative functions of educational process beyond classroom teaching].[2]

{¶32} We therefore conclude that R.C. 2744.02(B)(2) does not exempt appellees' first claim from the Board's sovereign immunity.

{¶33} Finally, appellee Catherine Bouchard's claim for loss of consortium is a derivative cause of action dependent upon the existence of a primary cause of action. *Messmore v. Monarch Machine Tool Co.*, 11 Ohio App.3d 67, 68-69, 463 N.E.2d 108 (9th Dist.1983). Because we found the primary claims for negligent hiring and retention, and intentional infliction of emotional distress, fail to survive the Board's motion to dismiss, the

---

[2] We note that in *McConnell v. Dudley*, 2018-Ohio-341, 106 N.E.3d 180 (7th Dist.), appeal allowed, 153 Ohio St.3d 1451, 2018-Ohio-3026, 103 N.E.3d 830, the Seventh District Court of Appeals found that a genuine issue of material existed as to whether a township was negligent in training and supervising an officer who ran a red light during a pursuit and struck the plaintiff. The Seventh District relied upon its previous authority that "R.C. 2744.02(B)(1), which strips a political subdivision of immunity when an employee negligently operates a motor vehicle, includes entrustment and failure to train claims." *Id.* at ¶ 31, citing *Wagner v. Heavlin*, 136 Ohio App.3d 719, 737 N.E.2d 989 (7th Dist.2000). The Ohio Supreme Court accepted the township's appeal on Proposition of Law No. One: "A political subdivision is immune from allegations of negligent hiring, or failure to train or supervise police officers, as such allegations do not fall within any of the exceptions found within R.C. 2744.02(B)(1) through (B)(5)." The appeal remains pending before the Court.

derivative cause of action, loss of consortium, fails as a matter of law. *Miller v. City of Xenia*, 2nd Dist. Greene No. 2001 CA 82, 2002 WL 441386 at *3 (March 22, 2002).

{¶34} Accordingly, we find the trial court erred in failing to grant judgment on the pleadings to the Board as to the claims against them in the complaint. The Board's sole assignment of error is sustained.

## CONCLUSION

{¶35} Upon our de novo review of appellees' complaint, we find appellees failed to plead any set of facts that, if proved, would establish liability against the Board. Accordingly, we sustain the assignment of error and reverse the trial court's Judgment Entry of November 8, 2017.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.