[Cite as *A.W. v. Twinsburg Bd. of Edn.*, 2024-Ohio-2486.]

STATE OF OHIO　　　　)　　　　IN THE COURT OF APPEALS
　　　　　　　　　　　)ss:　　NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT　　)

A.W., a minor, and SHERISSE WELCH,
Parent/Legal Guardian of A.W.

　　　Appellee

　　　v.

M.G., a minor,

　　　Defendant

　　　and

BOARD OF EDUCATION OF THE
TWINSBURG CITY SCHOOL DISTRICT

　　　Appellant

C.A. No.　　　30763

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.　　CV-2023-03-0901

DECISION AND JOURNAL ENTRY

Dated: June 28, 2024

SUTTON, Presiding Judge.

{¶1} Defendant-Appellant Twinsburg City School District Board of Education ("the Board") appeals from the judgment of the Summit County Court of Common Pleas denying its motion for judgment on the pleadings. This Court reverses.

I.

{¶2} A.W., a minor child, and M.G., a minor child, were both students at Twinsburg High School in the Twinsburg City School District. On March 17, 2023, A.W., and her parent and legal guardian, Sherisse Welch, (collectively "the Plaintiffs") filed a complaint in the Summit

County Court of Common Pleas against M.G., his parents Lisa Hare and Monte Garrett, and the Twinsburg City School District Board of Education. The complaint did not name any individuals employed by the Twinsburg City School District Board of Education.[1]

{¶3} The complaint alleged that on March 4, 2022, A.W. and M.G. got into a fight at the high school during school hours. School personnel intervened to break up the fight. After the altercation, A.W. was sent home from school for fighting without receiving medical attention at school. A.W. alleged she suffered severe headaches, nausea, and vomiting within 24 hours of the attack, so she sought treatment in an emergency room. At the hospital, she was diagnosed with a concussion.

{¶4} The complaint contained causes of action against M.G.'s parents for assault, failure to exercise parental control in violation of R.C. 3109.10, and negligence. The complaint also alleged causes of action against the Board for recklessly failing to exercise control of a student, negligently failing to exercise control of a student, recklessly failing to provide necessary medical attention, and negligently failing to provide necessary medical attention.

{¶5} The Board filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C), arguing that as a political subdivision, the Board was entitled to immunity pursuant to Chapter 2744 of the Ohio Revised Code. A.W. and Ms. Welch did not respond in opposition. The trial court denied the motion, finding the complaint alleged sufficient material allegations to show the Board was not entitled to political subdivision immunity.

{¶6} The Board timely appealed raising one assignment of error for this Court's review.

---

[1] Although the dissent states additional facts alleged in the complaint, these facts are not relevant to A.W.'s causes of action as stated in the complaint.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED BY DENYING IMMUNITY TO THE APPELLANT, BOARD OF EDUCATION OF THE TWINSBURG CITY SCHOOL DISTRICT.**

**{¶7}** In its sole assignment of error, the Board argues the trial court erred in denying its motion for judgment on the pleadings. We agree.

Standard of Review – Motion for Judgment on the Pleadings

**{¶8}** Civ.R. 12(C) provides:"[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings pursuant to Civ.R. 12(C) has been characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief may be granted; therefore, the same standard of review applies to both motions. *Business Data Sys., Inc. v. Figetakis*, 9th Dist. Summit No. 22783, 2006-Ohio-1036, ¶ 7. Although similar to a Civ.R. 12(B)(6) motion, Civ.R. 12(C) motions "are specifically for resolving questions of law[.]" (Internal citation omitted.) *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). Thus, this Court reviews such motions under the de novo standard of review. *Pinkerton v. Thompson*, 9th Dist. Lorain No. 06CA008996, 2007-Ohio-6546, ¶ 18, citing *Hunt v. Marksman Prod.*, 101 Ohio App.3d 760, 762 (9th Dist.1995); *See also White v. King*, 147 Ohio St.3d 74, 2016-Ohio-2770, ¶ 13.

**{¶9}** "We will not reverse a trial court's denial of a Civ.R. 12(C) motion unless when all the factual allegations of the complaint are presumed true and all reasonable inferences are made in favor of the nonmoving party, it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling him to the requested relief." *Pinkerton* at ¶ 18, citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). "'Civ.R. 12(C) presents an

onerous burden for litigants and consequently, a trial court must be circumspect in its analysis of Civ.R. 12(C) motions.'" *Blackmon v. Akron School Dist.*, 9th Dist. Summit No. 30717, 2024-Ohio-318, ¶ 7, quoting *Figetakis* at ¶ 10.

Political Subdivision Immunity

{¶10} "Ohio's Political Subdivision Tort Liability Act, which governs political subdivision liability and immunity, is codified in R.C. 2744.01 et seq." *Bevelacqua v. Tancak*, 9th Dist. Lorain No. 21CA011797, 2022-Ohio-4442, ¶ 10, citing *McNamara v. City of Rittman*, 125 Ohio App.3d 33, 43 (9th Dist.1998). "The Act 'sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property.'" *Id.*, quoting *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, ¶ 9. "Under the first tier of the analysis, political subdivisions enjoy a general grant of immunity for any injuries, deaths, or losses 'allegedly caused by any act or omission of the political subdivision or [its] employee * * * in connection with a governmental or proprietary function.'" *Id.*, quoting R.C. 2744.02(A)(1). "That immunity, however, is not absolute." *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, ¶ 21.

{¶11} "Under the second tier of the analysis, a political subdivision's 'comprehensive immunity can be abrogated pursuant to any of the five exceptions set forth at R.C. 2744.02(B).'" *Bevelacqua* at ¶ 11, quoting *Shalkhauser v. Medina*, 148 Ohio App.3d 41, 46 (9th Dist.2002). The five exceptions set forth in R.C. 2744.02(B) are:

> [A] political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> (1) * * * [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees

when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;

(b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct;

(c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued pursuant to Chapter 4507. of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.

(2) * * * [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

(3) * * * [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

(4) * * *[P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a

responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

{¶12}  "If one of those exceptions applies, R.C. 2744.02(B) also provides several 'full defenses' a political subdivision may assert in specific instances." *Bevelacqua* at ¶ 11; *see* R.C. 2744.02(B).  "Those full defenses, if proven, will result in the political subdivision retaining its cloak of immunity." *Id*., citing *McConnell* at ¶ 22-23. "If no full defense is proven or available to the political subdivision under R.C. 2744.02(B), then the analysis proceeds to the third tier." *Id*. "Under the third tier, immunity 'may be restored, and the political subdivision will not be liable, if one of the defenses enumerated in R.C. 2744.03(A) applies.'" *Id*., quoting *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 13CA010335, 2014-Ohio-969, ¶ 10.

{¶13}  With respect to the first tier of the immunity analysis, the trial court noted "it is undisputed [the Board] is a 'governmental agency/organization which operates the Twinsburg City School from Pre-K through high school.'"  Under the second tier, the trial court found that based upon the allegations set forth in the complaint, an exception to immunity set forth in R.C. 2744.02(B)(2) applied.  The trial court stated:

> Here, Plaintiffs allege [the] Board has a duty to exercise control over students in its care as well as provide students in its care necessary medical attention, and [the] Board negligently or recklessly failed to do [the] same.  Specifically, Plaintiffs allege the failure of staff members at THS to control Defendant M.G. allowed Defendant to attack Plaintiff A.W., and staff members failed to provide necessary medical care to Plaintiff A.W. after the March 4, 2022 incident, even though Plaintiff complained of injury. When ruling on a motion for judgment on the pleadings, pursuant to Civ.R. 12(C), the [c]ourt is limited to considering only the allegations set forth in the [c]omplaint.  [*McCleland v. First Energy*, 9th Dist. Summit No. 22582, 2005-Ohio-4940, ¶ 6].  This [c]ourt finds Plaintiffs have set forth sufficient facts in the [c]omplaint to establish an exception to generalized immunity-specifically, the exception set forth in [R.C. 2744.02(B)(2)] wherein [the] Board may be liable for injury to a person caused by negligent performance of acts by their employees with respect to providing a public school education.

Therefore, this [c]ourt finds Plaintiffs' [c]omplaint sets forth an exception to the general grant of immunity given to [the] Board pursuant to [R.C. 2744.02(A)(1).]

As such, the trial court determined Plaintiffs set forth sufficient facts in the complaint to establish an exception to immunity applied pursuant to R.C. 2744.02(B), which states "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to *proprietary functions* of the political subdivisions." (Emphasis added.) After determining an exception to immunity applied, the trial court found that none of the defenses set forth in R.C. 2744.03 applied to reinstate immunity to the Board.

{¶14} Upon review of the record, we conclude the trial court erred in determining an exception to immunity applied pursuant to R.C. 2744.02(B)(2) because neither the Board nor its employees were engaged in proprietary functions as required under this subsection of the statute. The distinction between governmental functions and proprietary functions matters because, "with respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts." *Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450 (1994).

{¶15} R.C. 2744.01(C)(2) provides multiple examples of governmental functions. R.C. 2744.01(C)(2)(c) specifically designates "[t]he provision of a system of public education" as a governmental function. "There are two ways in which a given function may be proprietary: either it is specifically listed as a proprietary function pursuant to R.C. 2744.01(G)(2), or it is not described in R.C. 2744.01(C)(1)(a), (b), or (C)(2) and 'promotes or preserves the public peace, health, safety, or welfare and * * * involves activities that are customarily engaged in by nongovernmental persons.'" *Taylor v. Boardman Twp. Local School Dist. Bd. of Edn.*, 7th Dist. Mahoning No. 08 MA 209, 2009-Ohio-6528, ¶ 14. The specifically enumerated proprietary functions in R.C. 2744.01(G)(2) include:

(a) The operation of a hospital by one or more political subdivisions;

(b) The design, construction, reconstruction, renovation, repair, maintenance, and operation of a public cemetery other than a township cemetery;

(c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system;

(d) The maintenance, destruction, operation, and upkeep of a sewer system;

(e) The operation and control of a public stadium, auditorium, civic or social center, exhibition hall, arts and crafts center, band or orchestra, or off-street parking facility.

**{¶16}** The exception to immunity for engaging in a governmental function provided to school boards "extends to most school activities and administrative functions of the educational process, even if not directly comprising part of the classroom teaching process." *Perkins v. Columbus Bd. of Edn.*, 10th Dist. Franklin No. 13AP-803, 2014-Ohio-2783, ¶ 12. *See generally DeMartino v. Poland Local School Dist.*, 7th Dist. Mahoning No. 10 MA 19, 2011–Ohio–1466, ¶ 29 (conducting band practice is a governmental function); *Taylor v. Boardman Twp. Local School Dist. Bd. of Edn.*, 7th Dist. Mahoning No. 08 MA 209, 2009-Ohio-6528, ¶ 3 (provision of school lunches is a governmental function); *Perkins* at ¶ 12 (submission of student attendance data and grades to Ohio Department of Education is governmental function); *Anderson v. Warren Local School Dist. Bd. of Education*, 4th Dist. Washington No. 16CA21, 2017-Ohio-436, ¶ 65 (redesign of school building's drainage and sewer system is a governmental function); *Craycraft v. Simmons*, 2d Dist. Montgomery No. 24313, 2011-Ohio-3273, ¶ 21 (maintaining order and security in the classroom and on school grounds is an integral part of governmental function). As the Fourth District Court of Appeals has noted, "even if a nongovernmental entity customarily engages in the same type of activity, the overlap does not necessarily mean that the function is a proprietary

function." *Student Doe v. Adkins*, 4th Dist. Lawrence No. 20CA08, 2021-Ohio-3389, ¶ 45, citing *Taylor* and *Craycraft*.

{¶17} The trial court's characterization of the Board's exercise of control over students and the provision of medical care for students as being proprietary functions is not correct under the law. None of the alleged functions fall within the specifically enumerated proprietary functions in R.C. 2744.01(G)(2). The Plaintiffs' complaint alleged the Board failed to provide a safe and secure environment when it failed to exercise control over the students and prevent the fight. In *Student Doe* at ¶ 43, the Fourth District Court of Appeals explained, as part of its governmental function, "a public school system may implement [policies and procedures that] provide a safe and secure environment for students and form part of the overall structure of the provision of a system of public education." Further, in *Burchard v. Ashland Cnty. Bd. of Developmental Disabilities*, 5th Dist. Ashland No. 17-COA-041, 2018-Ohio-4408, the Fifth District Court of Appeals considered a case where school employees were alleged to have failed to seek medical attention for a student. When considering the school board's supervision of the school employees who engaged in the alleged conduct, the *Burchard* Court found the employees were engaged in a governmental, not proprietary function. *Burchard* at ¶ 31. Therefore, for the reasons stated above, we conclude the allegations contained in the complaint concern governmental and not proprietary functions of the Board. Accordingly, under the facts of this case, R.C. 2744.02(B)(2) does not create an exception to the Board's sovereign immunity.

{¶18} Considering the other exceptions to immunity outlined in R.C. 2744.02(B), the record does not indicate any of the other exceptions apply to the facts alleged in the complaint. Based on the pleadings in this case, the trial court erred in finding the Board was not entitled to immunity because the complaint does not allege a proprietary function that the Board was engaged

in, or any other exception found in R.C. 2744.02(B). Although this Court empathizes with A.W.'s situation, as alleged in the complaint, Plaintiffs failed to plead this matter in a way that would allow them to overcome the Board's broad presumption of immunity.

{¶19} Accordingly, the Board's assignment of error is sustained.

III.

{¶20} The Board's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the matter is remanded for proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETTY SUTTON
FOR THE COURT

CARR, J.
CONCURS.

FLAGG LANZINGER, J.
DISSENTING.

{¶21} I respectfully dissent from the majority opinion because I would affirm the decision of the trial court. While the majority summarizes some of the factual allegations in the complaint, it omits others that I believe are relevant. The majority states that the Plaintiffs alleged that A.W. and "M.G. got into a fight at the high school during school hours." The complaint reflects that the Plaintiffs alleged that M.G. approached A.W. from behind, grabbed her by the head, swung her around by her head, and slammed her head against the wall several times. The Plaintiffs alleged that A.W. tried to defend herself and free herself from M.G.'s grasp, and that A.W. was finally freed when several school employees intervened.

{¶22} In addition to alleging that M.G. violently assaulted A.W., the Plaintiffs alleged that A.W. was sent home from school for fighting without receiving medical attention. The Plaintiffs alleged that A.W. was expelled for 80 days, and that the school was required to provide A.W. with her schoolwork during that time pursuant to her Individualized Educational Plan ("IEP"). The Plaintiffs alleged that some of the school officials did not provide A.W. with her schoolwork, which caused her grades to suffer. The Plaintiffs also alleged that the school refused to release some of the surveillance footage of the incident, claiming that the footage was "too blurry."

{¶23} The Plaintiffs further alleged that A.W. was charged in juvenile court as a result of the incident. The Plaintiffs alleged that the juvenile case was dismissed because the school failed to produce all of the surveillance footage and failed to communicate with the prosecutor.

{¶24} As the majority acknowledges, "Civ.R. 12(C) presents an onerous burden for litigants and consequently, a trial court must be circumspect in its analysis of Civ.R. 12(C) motions." *Blackmon v. Akron City School Dist.*, 9th Dist. Summit No. 30717, 2024-Ohio-318, ¶ 7, quoting *Business Data Sys., Inc. v. Figetakis*, 9th Dist. Summit No. 22783, 2006-Ohio-1036, ¶ 10. "Ohio is a notice-pleading state[,]" and a "plaintiff is not required to prove his or her case at the pleading stage." *Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Servs.*, 167 Ohio St.3d 390, 2021-Ohio-4096, ¶ 10, 16; *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). "[O]utside of a few specific circumstances, * * * a party will not be expected to plead a claim with particularity." *Maternal Grandmother* at ¶ 10. "Rather, 'a short and plain statement of the claim' will typically do." *Id.*, quoting Civ.R. 8(A). As the Ohio Supreme Court has stated, "the failure to set forth each element of a cause of action with crystalline specificity does not subject a complaint to dismissal." *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 81 (1989). "The simplified notice-pleading standard relies on liberal discovery rules and summary-judgment motions to define disputed facts and issues to dispose of nonmeritorious claims." *Vinicky v. Pristas*, 163 Ohio App.3d 508, 2005-Ohio-5196, ¶ 6 (8th Dist.).

{¶25} The majority correctly notes that the Plaintiffs alleged causes of action against the Board for recklessly failing to exercise control of a student, negligently failing to exercise control of a student, recklessly failing to provide necessary medical attention, and negligently failing to provide necessary medical attention. This Court, however, "must look to the 'actual nature or subject matter pleaded in the complaint,' rather than 'labels' used to identify a particular cause of action." *E.I du Pont de Nemours & Co. v. Cincinnati Printers Co.*, 12th Dist. Butler No. CA2008-12-307, 2010-Ohio-1631, ¶ 10, quoting *Funk v. Rent–All Mart, Inc.*, 91 Ohio St.3d 78, 91, 2001-Ohio-270. Presuming all factual allegations of the complaint are true and making all reasonable

inferences in favor of the Plaintiffs, I would conclude that the Plaintiffs' complaint alleged more than those delineated causes of action at this stage of the proceedings. *See Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988).

{¶26} R.C. 2744.02(B)(5) provides an exception to immunity when civil liability is expressly imposed by a section of the Revised Code. R.C. 2307.44, which is the civil hazing statute, is one of those sections. *Golden v. Milford Exempted Village School Bd. of Edn.*, 12th Dist. Clermont No. CA2008-10-097, 2009-Ohio-3418, ¶ 29, fn. 4. Here, the Plaintiffs alleged— among other allegations—that M.G. violently assaulted A.W. at school. While the Plaintiffs did not specifically allege that the assault was connected to an act of initiation, I would conclude that the Plaintiffs' complaint sufficiently pled a claim of civil hazing under Ohio's notice-pleading rules. *See* R.C. 2307.44 (regarding civil liability for hazing); *Golden* at ¶ 28; *Vinicky* at ¶ 12-13; *compare E.F. v. Oberlin City School Dist.*, 9th Dist. Lorain No. 09CA009640, 2010-Ohio-1370, ¶ 13 (affirming the trial court's grant of judgment on the pleadings because the plaintiffs did not allege sufficient facts to establish a claim for hazing).

{¶27} Additionally, the Plaintiffs alleged that the school failed to provide A.W. with her schoolwork while she was expelled, which caused her grades to suffer. The Plaintiffs' complaint indicates that A.W. had an IEP, and implies that she may be considered a member of a protected class for purposes of a civil rights claim. Ohio's sovereign immunity statute does not bar such claims. *Grace v. Pecorelli*, 7th Dist. Columbiana No. 19 CO 0028, 2020-Ohio-4820, ¶ 46, quoting *Helfrich v. Branstool*, 5th Dist. Licking No. 08 CA 0072, 2009-Ohio-2865, ¶ 51 ("Ohio's sovereign immunity statute does not bar actions brought under federal civil rights laws * * *.").

{¶28} Simply put, at this stage of the proceedings, I would hold that the Plaintiffs' complaint set forth sufficient facts to survive the Board's motion for judgment on the pleadings. Accordingly, I respectfully dissent.

<u>APPEARANCES</u>:

BARTHOLOMEW T. FREEZE and MYRL H. SHOEMAKER, Attorneys at Law, for Appellant.

JOSEPH A. KACYON and JOSEPH A. BRUCE, Attorneys at Law, for Appellee.

TYRESHA BROWN O'NEAL and LON'CHERIE BILLINGSLEY, Attorneys at Law, for Defendants.